**Brandon A. Sibley**
17517 Cline Drive
Maurepas, LA 70449
Phone: (225) 369-7806
Fax: (985) 238-3818
Bsibley97@gmail.com

**Howard G. Brown**
1344 Lakeridge Drive
Baton Rouge, LA 70802
Phone: (504) 756-1987
Fax: (985) 238-3818
hgarybrown@gmail.com

**Melanie Jerusalem**
5130 Woodside Drive
Baton Rouge, LA 70808
Phone: 337-945-9008
jerusalemmelanie@yahoo.com

No. **23-30540**

# UNITED STATES COURT OF APPEALS

## FIFTH CIRCUIT

### HOWARD GARY BROWN, BRANDON SIBLEY, MELANIE JERUSALEM

*Plaintiffs – Appellants,*

-V.-

**Shelly D. Dick, in both Individual & Official Administrative Capacity; William Brown, United States Marshall, in both Individual & Official capacity; Jeff B., United States Marshal, in both his Individual and & Official Capacity; Merrick Garland, U.S. Attorney General, In his official capacity; Ronald L. Davis, in his official capacity as Director, United States Marchal Service; Metropolitan Security Services, Incorporated, also known as Walden Security; Michael Attaway, in both Individual & Official capacity; Jeff Bowie, United States Marshal, in both his Individual & Official Capacity,**

*Defendants - Appellees*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF LOUISIANA

### CIVIL ACTION NO: 3:23-0024-SMH-CBW

### APPELLANT'S MOTION FOR PRELIMINARY INJUNCTION

# Table of Contents

.................................................................................................................... 1

CERTIFICATE OF CONFERENCE ..................................................................... 3

MOTION FOR PRELIMINARY INJUNCTION ................................................... 4

INTRODUCTION .................................................................................................. 5

ARBITRARY AND CAPRICIOUS STANDARDS OF REVIEW .......................... 8

DISCRIMINATION, INTIMIDATION TACTICS, RETALIATORY ACTS, AND
DISPARATE IMPACT TO DISPARATE TREATMENT ..................................... 17

    *I.    US MARSHALS AND WALDEN SECURITY* ............................................. *17*

    *II.    CLERK AND HIS OFFICERS* .................................................................. *19*

UNEQUAL PROTECTION AND PLACES OF PUBLIC ACCOMMODATION ..... 22

ADDITIONAL DISCRIMINATORY ANIMI STILL OCCURRING IN THE MIDDLE
DISTRICT ........................................................................................................... 30

## CERTIFICATE OF CONFERENCE

**AUSA Katherine Green**: responds that she is <u>opposed</u> to this motion.

**AUSA Karen King:** responds that she is opposed to the motion and regards the motion as having no merit and will submit opposition.

**Chase Evan Zachary:** responds that he is <u>opposed</u> to this motion.

**Nate Kinard:** (Responding on behalf of Walden Security including **Elizabeth Bailly Bloch**, **Christine S. Keenan**, and **Justin Furrow**) responds in <u>opposition</u> to this motion, and in a style not unlike his client's behavior contained herein; took the time **<u>to threaten</u>** **<u>Appellants with sanctions should this motion be filed</u>**.

*The phrase* ***"on the merits"*** *refers to a case whose decision rests upon the law as it applied to the particular evidence and facts presented in the case. This is in opposition to cases whose decisions rest upon procedural grounds. The distinction between decisions that rest on the merits rather than on procedural grounds is important because a decision on the merits is considered final and is thus bound by res judicata. ~Law.Cornell.Edu*

# MOTION FOR PRELIMINARY INJUNCTION

COMES NOW, Plaintiffs Brandon Sibley, Howard Gary Brown, and Melanie Jerusalem to move this Honorable Court pursuant to **FRCP Rule 65** to enter an Order granting Declaratory and Injunctive Relief to the Plaintiffs and those similarly situated who have faced invidious discriminatory animi via weaponized federal, state, and local governments conspiring with private entities to suspend the rule of law, and instituted class warfare via tyrannical despotism. Plaintiffs request that this preliminary injunction **(1)** stays the proceedings of the originating case in the MDOL # *3:23-cv-0024***, (2)** ends all discriminatory animi, identified and detailed by Plaintiffs in the MDOL **(3)** requires the USMS, METROPOLITAN SECURITY SERVICES, INC (a/k/a WALDEN SECURITY), and all employees and/or contractors working within the Middle District of Louisiana to immediately cease and desist in all discrimination, retaliatory acts, and intimidation tactics implemented against the Plaintiffs **(4)** restrict <u>all</u> who would, but specifically Shelly Dick, WALDEN SECURITY, and the USMS from applying administrative orders, solely intended for employees of the government, as lawful edicts against the Plaintiffs, the general public,

and those similarly situated, **(5)** orders the USMS to hand over a copy of their 'private' memo that declares Plaintiffs Brown and Sibley a 'danger,' **(6)** restrict the USMS and all other law enforcement agencies from using national databases to spread 'private' memos of danger about the Plaintiffs and others similarly situated, **(7)** create equal protection under the law for all federal courthouses and government buildings regarding conditions for entry, and **(8)** stay this appeal to prevent briefs being filed until after the resolution of this motion, if even needed.

## INTRODUCTION

The rule of law is a system of rules, policies, customs, practices, and civility that results in uniformity for civil society to function properly, therefore, from the highest seat in federal government to the lowest slum in America, this is a nation of laws, not men!

When government overreaches its given authority, agents break their oaths of office, and public-private partnerships are used to subject the people to what government alone could not; it is the right and duty

of the People to exercise their First Amendment Right to speak out against the usurpation of power and ultimately petition the government for grievances.

Whereas the federal government has entered multiple cohesive conspiratorial relationships over the course of the past four **(4)** years which include the control of the public's COVID-19 perception through propaganda via coercion of social and legacy media by unelected bureaucrats within the CDC, FDA, CMS, OSHA, and EPA. This modern Administrative State has suspended our Constitutionally Secured Rights, and in its place sits a de facto government where the people have been ruled by unelected self-anointed "experts" with an iron fist of tyrannical and capricious edicts.

*Equity Maxim: "The law helps the vigilant, before those who sleep on their rights."*

The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, the intuitions of public policy; avowed or unconscious; even the prejudices which judges share with their fellow man have had much

greater influence than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with rigidly as if it contained only the theorems and corollaries of a book of mathematics. To know what it is, we must know what it has been, and what it tends to become. This requires the consultation of history and existing theories of legislation, but the most difficult labor will be to comprehend the combination of both, as they morph into new products at every stage. The substance of the law, at any given time, is very nearly congruent to what is then understood to be seasonable; but its form and machinery, combined with the degree to which it can produce desired results, depend upon from whence it came.

While America and its people are facing another hurdle in the annals of our history, our system of Jurisprudence has already met and overcome this same style of systematic oppression. It is called <u>political oppression by subversive ideologies;</u> and it went by the name Democratic Socialist Party in 1868, whereas that political terror group resorted to violent means to enforce their zealotry on others, and it had a disdain for individual responsibility and moral accountability; albeit in disguise today, make no mistake that fear, coercion, and terror are

all being used to subjugate those who refuse to conform to the new ideology/cult/religion.

# ARBITRARY AND CAPRICIOUS STANDARDS OF REVIEW

1.     Plaintiffs have suffered a foray of political persecution and discriminatory animi for simply conscientiously objecting to forced medical intervention; the consequences being open segregation, targeting, and scrutiny in a Federal Courthouse for merely exercising fundamental liberties. ROA.873 ROA314

2.     When the machinations of government are weaponized against the people, a dutiful and wise people use the Judiciary to hold those entrusted with OUR offices accountable to the rule of law.

3.     Whereas this new controversy involving the Judiciary and its officers, using administrative law to violate the civil and constitutional rights of Citizens of the United States, is so unique that the appellants ask this Court to apply strict scrutiny standards and right of review (**U.S. CODE TITLE 5 § 702**) to the policies and rules made through the Administrative process by individual Judges or their delegates, as we

will see below, executed by the United States Marshals through private security contracts across this Nation.

4.      Plaintiffs petition this Honorable Court to side with American Jurisprudence; which has enshrined individual liberty, meritocracy, and personal responsibility; and reject the old-world view of monarchist rule where oppression is decided by the few in back rooms of smokey palaces.

5.      The Modern Administrative State; consisting of unelected bureaucrats; have infiltrated, subjugated, and bastardized our American way of life by instituting a rule of self-anointed 'experts' who can direct the People's passions using sophisticated propaganda which provides the necessary opium of the masses; (Fear) that allow those officials to move the people into solutions of global governance while acquiescing their national sovereignty.

6.      The separation of powers doctrine says that the legislature cannot delegate, neither confer legislative power, nor impose legislative duties upon the courts because those duties are not judicial in nature.

> *"'**Judicial.'** Belonging to the office of a judge; as judicial authority. Relating to or connected with the administration of justice; as a judicial officer. Having the character of judgment or formal legal procedure; as a judicial act. Proceeding from a court*

*of justice; as a judicial writ, a judicial determination. Involving the exercise of judgment or discretion; as distinguished from ministerial."*

7.    "Congress has delegated non-adjudicatory powers to the judicial branch that do not trench upon prerogatives of another Branch and that are appropriate to the central mission of the Judiciary. The legislature cannot commit to the judiciary powers that are primarily legislative."

***Application of Dailey, 195 W. Va. 330, 465 S.E.2d 601 (1995).***

8.    The powers delegated to the operation of Federal Courthouses are outlined within **U.S. Code Title 28 §§ 601-613**.

9.    Day-to-day responsibility for judicial administration rests with each individual court. By statute and administrative practice, each court appoints support staff, supervises spending, and manages court records.  The chief judge of each court oversees day-to-day court administration while important policy decisions are made by judges of a court working together. The clerk of court is the executive, hired by the judges of the court, to carry out the court's administrative functions. The clerk manages the court's non-judicial functions according to policies set by the court and reports directly to the court through the chief judge.

10.   Administrative actions are either <u>ministerial</u> or <u>discretionary</u>. A <u>ministerial</u> function is one where the authority has a duty to do a particular thing in a particular way. Such actions are, however, rare. In most administrative actions, the administrative authority has the power either to act or not to act in one way or the other which is called Discretionary power. 'Discretion' is the power to decide or act according to one's judgment.

> ***"Ministerial act".*** *That which is done under the authority of a superior; opposed to judicial. That which involves obedience to instructions, but demands no special discretion, judgment, or skill An act is "ministerial" when its performance is positively commanded and so plainly prescribed as to be free from doubt. Official's duty is "ministerial" when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts. One which a person or board performs under a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or the exercise of his or their own judgment upon the propriety of the act being done.*

11.   The law of unintended consequences applies to judicially created rules as much as those created by the legislature or agency (executive branch), but the most worrisome problem for the Appellants and others

similarly situated is: the life tenure of Judges who are expected to interpret law, not legislate it from their bench.[1]

12.    The legislature acts first, the executive branch (or private parties) second, and the judiciary third.

13.    Judicial Power for Judge Dick and other judges who have used administrative orders to knowingly and willingly violate the due process clause of our United States Constitution and direct members of the executive branch, under their direct supervision, to search and seize the free movement of Appellants and those similarly situated without objective facts that could reasonably be articulated as suspicion of criminal activity is a <u>breach</u> of the duties, functions, and responsibilities of the Judicial Office.

### *Equity Maxim: "He who can and does not forbid that which is done on his behalf, is deemed to have bidden it."*

14.    Appellants are painfully aware of the demoralization and normalization techniques being deployed in the United States by enemies foreign and domestic, their agenda is simple: destroy the

---

[1] Judges must be aware today that there are currents of ferment in the legal world that seek to revise or even overthrow traditional notions of judicial interpretation." William Rheinquist, Politics and the Constitution.

Meritocracy and trade the freedom of the individual for the duties and obligations of the collective.

15.    Since Congress has never delegated to District Judges the authority to act non-judicially in creating classes of citizens with more rights and privileges than others; the Appellants seek judicial review for non-statutory federal administrative action.

16.    Judges across this country have acted outside the bounds of the law by directing, advising, encouraging, and ultimately conspiring with officers of their court, (Executive Branch) under their direct authority, to violate rights of liberty; the ability to think and act independently of another; to violate property, to forcibly administer medical advice, and finally to act as curator ad litem for Citizens of the United States.

17.    These actions were completed under the guise of public health, absent any objective fact that masks work by inhibiting contraction or transmission of disease, particularly COVID-19.

18.    Further, these actions were absent and contrary to any objective facts that COVID-19 'vaccines,' offered by ROA.555 Pfizer, ROA.570 Moderna, or ROA.576 Jansen provided anything other than therapeutic

benefits with <u>statements by all three manufacturers stating within their Fact Sheets</u>, "**the risks and benefits are unknown.**"

19.    The Appellants only available alternative to open the doors of the Middle District to the general public was to file a discrimination lawsuit.

20.    On the issue of standing, all three **(3)** Appellants have or had pending litigation before the Middle District of Louisiana with the potential of new controversies or any of the appeals, now in the 5th circuit, to be remanded back to the Middle District.

21.    All three **(3)** Appellants[2] have reason to believe[3] that the political terrorizing of United States Citizens through medical tyranny could happen again.[4] Voluntary cessation of the abrogation of the People's Constitutional Rights by way of administrative orders is not enough, as that implies those imposing the administrative orders are free do to so again in the future; when, in fact, there are several ongoing discriminatory animi that still exist in the Middle District along with other Courts and federal buildings across this nation because of the

---

[2] https://www.wlwt.com/amp/article/cincinnati-childrens-hospital-requiring-staff-wear-masks/45229990

[3] https://www.cbsnews.com/news/is-masking-coming-back-covid-variants-experts-2023/

[4] https://www.everydayhealth.com/coronavirus/is-it-time-to-start-wearing-a-mask-again/

continued perceived authority that administrative orders carry. Only a decisive ruling from this court can prevent continued and future injury to Plaintiffs and those similarly situated.

22.   *"Next, we turn to whether the balance of the equities warrants an injunction and whether such relief is in the public interest. Where the government is the opposing party, harm to the opposing party and the public interest "merge."* **Niken v Holder, 556 U.S. 418, 435 (2009)**

23.   To establish Article III standing, plaintiffs bear burden to show **(1)** injury in fact ROA.314 **(2)** that is fairly traceable to defendant's challenged action, ROA.873 and **(3)** likely to be redressed by their requested relief.

24.   Party seeking preliminary injunction must establish that **(1)** they are likely to succeed on merits, **(2)** there is substantial threat they will suffer irreparable injury otherwise, **(3)** potential injury outweighs any harm that will result to other side, and **(4)** injunction will not disserve public interest.

25.   Appellants sufficiently plead that the vision of the anointed over the last three **(3)** and one-half **(½)** years disserved the public's interest with the added secondary and tertiary effects caused by the shutting

down of our economy, isolation of a social species, a generational gap of
sufficient education in our youth, rubber stamping masked robber
barons to run rampant in our streets, courthouses, and banks; and the
invidious discriminatory animi created by government as another class
warfare struggle not unlike that of Mao, Marx, and Hebert Marcuse
was and is a substantial threat to the continuing of our Constitutional
Republic and the individual liberties enshrined within our Declaration
of Independence.

26.    Plaintiffs moved the lower court, Honorable Judge Maurice Hicks,
to issue an injunction opening all federal buildings who have, are, or are
planning to use COVID-19, or any other pretense to circumnavigate the
rule of law in this country and use the Administrative Procedure Act as
a means to violate the citizen's rights without due process of law.

27.    Plaintiffs ask this Court to prohibit federal government employees
who urge, recommend, encourage, pressure, induce, or directly remove
Citizens from publicly accessible areas in violation of First Amendment
rights of United States Citizens who have been subjected to arbitrary
and capricious invidious discriminatory animi, absent of objective facts
that any officer of the executive branch could articulate to warrant

search or seizure of Plaintiffs or those similarly situated, nor probable

cause found by a magistrate that would indicate that Plaintiffs were, in

fact, carrying communicable diseases.

*Equity Maxim: "No one should suffer by the act of another."*

# DISCRIMINATION, INTIMIDATION TACTICS, RETALIATORY ACTS, AND DISPARATE IMPACT TO DISPARATE TREATMENT

## I.     US MARSHALS AND WALDEN SECURITY

29.     Beginning on or about <u>June 12, 2023</u>, detailed @ ROA.872

retaliatory acts by WALDEN SECURITY, supposedly at the direction of

the US MARSHALS in a 'private memorandum,' ordered WALDEN

AGENTS to single out and further discriminate against Plaintiffs

Brown and Sibley upon any entry into the Courthouse; including, but

not limited to, the removal of their shoes for inspection (despite wearing

flip flops) and in an unprecedented and brazen display of intimidation

assigned an armed guard to escort Plaintiffs to all places inside the

Courthouse.

> **DISCRIMINATION**, *n. 1. The act of distinguishing; the act of making or observing a difference; distinction; as the discrimination*

*between right and wrong. 2. The state of being distinguished. 3. Mark of distinction.*

30.    Vaccinated vs. Unvaccinated, Masked vs. Un-Masked, by definition and irrefutable by facts and evidence, the hyperpolarized dichotomy introduced through fear was not to the benefit of the people and created with it the ability to "mark" each other in groups; reminiscent of Hawthorne's '*The Scarlet Letter*.'

31.    There may have been legitimate fear felt by the employees of the Middle District when Plaintiff Brown spoke to them, and they used that fear to classify Plaintiffs as 'dangerous,' but <u>the threat wasn't from the Plaintiffs</u>; oh no, it was merely **fear of the truth**.

32.    On <u>June 13, 2023</u>, Plaintiff Brown used the USMS web portal to request the private memo via a FOIA request stating:

> "*Please provide the United States Marshals Policy for the Middle District of Louisiana that requires visitors to the Courthouse to remove their shoes as a condition for entry into the courthouse. (Date Range for Record Search: From 06/07/2023 To 06/13/2023).*"

33.    On <u>September 20, 2023</u>, well beyond the time allowed by U.S. Code to respond to such a request, Plaintiff Brown received a response to his inquiry that resulted in twenty-three **(23)** pages of redacted entry policies for the MDOL.

34.    The twenty-three **(23)** page redacted document contained no mention of Plaintiff Brown or any articulable suspicious behavior that would allow for such treatment by a law enforcement official of a private citizen.

35.    Further, Plaintiff Brown entered the Bankruptcy side of the MDOL without the removal of his shoes, nor an armed guard escort as detailed in his *Affidavit of Intimidation Tactics.* ROA.873

36.    Through the administrative orders complained about herein: Judge Dick, the USMS, and WALDEN SECURITY all believe that Judge Dick has been granted legislative power to make laws for the general public, and in addition, has been given the ability to suspend duly made laws passed by the Louisiana legislature and signed by the governor; **LA RS 14:313**, **LA RS 46:231.4** and *Article 22 of the Louisiana Constitution* to mention a few.


## II.    <u>CLERK AND HIS OFFICERS</u>


37.    Plaintiff Brown has requested an audience with Clerk McConnell repeatedly, Brown has left numerous messages for the clerk, Brown has asked to schedule a meeting or a phone call with the clerk, and Brown

has asked at the clerk's window for him to appear and answer questions regarding the administration of his cases.

38.    After countless attempts, Dana, an aid of the Clerk, appeared at the window of the Clerk's office to rudely state to Plaintiff Brown that, "The Clerk has no intention of meeting with or speaking to you," ROA.642 and then threatened Plaintiff with forcible removal from the premises by Walden Agents.

39.    Brown then composed written questions for the clerk ROA.824 that he filed into the record, only to receive a letter from the Western District Clerk that attempts to answer questions on McConnell's behalf ROA.815 which, if read, is complete nonsense.

40.    Thomas Jefferson enunciated the basic principle of public service: "When a man assumes a public trust, he should consider himself as public property." This sentiment has been expressed by numerous others over time becoming the familiar principle "Public service is a public trust." To ensure public confidence in the integrity of the Federal Government, Executive Order 12674 (as amended) forms the framework for the ethical behavior required and expected of all Federal employees.

41.    Liability exists for intentional acts as well as for negligence, but not in cases involving simple negligence or mere lack of due care. Judicial decisions have also made it clear that a supervisory official need not personally commit the wrongful act to become liable. The general rule is that officials can become liable if they directed, took part in, approved of, were present at, or had knowledge of a subordinate's misconduct or if that official's negligence caused or contributed to that misconduct.

42.    Plaintiff's *Motion for Clarification* which details the ambiguity of two **(2)** sets of local rules the judge imposed on Plaintiffs and the bouncing between two **(2)** clerks to attempt to confuse Plaintiffs and disrupt their case. ROA.903 or ROA.911 Yes, they are duplicates because the Clerk pretended not to receive the first copy via mail and then denied receiving it to Plaintiff Brown over the phone, and only after a 2nd copy was hand delivered, around the eighth day, did the clerk post the first copy he had received eleven **(11)** days prior (a frequent occurrence) ROA.871 all detailed in Plaintiff's '*Motion to strike duplicate filing and request e-filing for Plaintiffs*.' ROA.918 *See docket entries for Doc. 84 & Doc. 90 Nos. 42-58.* ROA.947

43.    Finally, Clerk McConnell issued and signed three **(3)** orders of his own ROA.651 ROA.679 ROA.739 that changed local rules and expedited responses from Plaintiffs while allowing advantageous sur-replies from all defendants with NO ORDER from the court to do so and, in addition, failed to even notify any Plaintiff of the change as detailed in Plaintiffs *Motion for Clarification.* ROA.903

44.    The Plaintiffs have had distractions and litigation costs increased directly caused by the Court with the numerous documents Plaintiffs have had to write ROA.926  ROA.918 ROA.763 ROA.764 just in the attempt to rein in the clerk.

## UNEQUAL PROTECTION AND PLACES OF PUBLIC ACCOMMODATION

45.    Plaintiffs clearly have identified a continual violation occurring at the MDOL, within their Complaint **(Doc. 1)**, ROA.17 further, Plaintiffs will provide multiple Orders from different Federal Courts and buildings around the United States that require the people to perform differently in each place, and as such, this Court cannot sidestep the issue at hand; the injunction is a tool primarily used in conjunction with

the **Civil Rights Act of 1964**, under *Title II*, which just happens to be a cause of action in Plaintiffs' complaint **(Doc.1.)**

46.    While a federal courthouse is not specifically recognized as a place of public accommodation as listed in **42 U.S.C. § 2000a**, it has inherent protections against denial of entry from the State Constitutions which is a more powerful protection against discrimination than places of public accommodation. So, the Plaintiffs request that this Court equate the courthouse (public access areas, excluding courtrooms i.e. lobby, clerk's office, etc.) with places of public accommodation for the purposes of this matter. *Article 22 of the Louisiana Constitution* reads as follows:

> *"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."*

47.    Since we have witnessed never-before-seen circumstances, should it not logically follow that we will have never before seen precedent set in the judicial aftermath of such a world event.

48.    In **Newman v Piggie Park Enterprises, Inc, 390 US 400, 402 (1968)** ("When a plaintiff brings an action under ...Title [II], he cannot recover damages."), therefore, the only available remedy to the Plaintiffs and those similarly situated for access to public

accommodations is an injunction.

**UNITED STATES STATUTES AT LARGE**
**88TH CONGRESS - 2ND SESSION**
**Convening January 7, 1964**
**An Act**
To enforce the constitutional right to vote, to confer jurisdiction upon the district **courts of the United States to provide injunctive relief against discrimination in public accommodations**, to authorize the <u>Attorney General to institute suits to protect constitutional rights in public facilities and public education</u>, to extend the Commission on Civil Rights, to prevent discrimination in federally assisted programs, to establish a Commission on Equal Employment Opportunity, and for other purposes.


49.     Brown purchased food and drink ROA.872 from a snack room in the MDOL that contained five **(5)** tables, three **(3)** commercial garbage bins like you would see in a fast-food restaurant, and at least fourteen **(14)** chairs all set up to allow patrons to enjoy their purchased food and drink on premises. **42 U.S.C. § 2000a(b)(2)** states as follows: "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises…" Thereby, making the MDOL a place of public accommodation.

50.     ***General Order 22-02***, for the <u>Southern District of Ohio</u>**,** ROA.439 states, "…**are required to wear facial coverings (i.e., face masks)**

to gain admittance to the Courthouses and must wear said facial coverings in all areas of the Courthouses unless **exempted for a medical or religious reason** by a Judicial Officer or a Court Unit Executive,...."

51.  ***Administrative Order No. 2022-22***, <u>Eastern District of New York</u> ROA.442 states, "Face Coverings: Individuals are generally not required to wear a mask unless instructed to do so by a judicial officer in a courtroom… Social Distancing: Individuals are generally not required to maintain any specific distance from others unless instructed to do so by a judicial officer in a courtroom…

52.  ***Administrative Order No. 2022-75***, <u>Southern District of Florida</u>**,** ROA.446 states "**ORDERED**,,,wear a mask, is **VACATED**. Masks are no longer required to be worn by visitors or employees…Judge retains discretion to require masks in his or her courtroom and chambers and may instruct witnesses to remove their face masks while testifying."

53.  ***Administrative Order No. 2023-2***, <u>Middle District of Louisiana</u> ROA.449 states, "**IT IS ORDERED**…highly encouraged to wear a high-quality mask in public indoor spaces. Court Unit Executives (CUE) and

judicial officers shall continue to make operational decisions…"

54.    This is all despite being a <u>FELONY</u> in Louisiana to wear a mask in public **LA RS 14:313**.

> *Equity Maxim: "actus curiae neminem gravabit; An Act of the Court shall prejudice no man."*

55.    The Department of Justice provides a health survey for visitors, **(Exhibit U5 & U6)** ROA.452 ROA.455 and their policy seems to be random depending on location…"

56.    The U.S. General Services Administration[5] ROA.459 allows for restricted or closed access to the public of their buildings while using 'enhanced screen provisions' … Security Committee (FSC) must convene, …highest ranking representative of the law enforcement organization responsible for protecting the property…"

57.    And finally, the Department of Labor[6] a different standard. ROA.461 DOL's masking requirements are aligned with guidance from the Safer Federal Workforce Task Force and tied to the three COVID-19 Community Levels of risk…"

---

58.    Plaintiffs and others similarly situated, face imminent likelihood of irreparable harm at the impulse of any number of appointed individuals.

59.    Federal Building policies have no coherent theme and vary with the beliefs and whims of whoever is in charge at each federal building or courthouse which is completely inconsistent with equal protection.

60.    Plaintiffs' rights, privileges, and immunities of bodily integrity, personal autonomy, and healthcare decisions are secured by the Constitution of the United States which includes the right to be free from unauthorized and unlawful physical abuse, forced display of physical signs of subservience, and forced association at the hands of government especially under the 'color' of law. The publicly accessible areas of one federal building must conform to the same standards of entry of the next to facilitate equal protection, therefore, any possible harm to the defendants is outweighed by the Supremacy of the United States Constitution and the rule of law.

61.    Plaintiffs allege that the "public" interest is not contravened by this injunction, because the public is not protected in any way, shape, nor form through masking or the emergency use authorized "vaccines,"

neither of which, in practice, inhibits anyone from contracting or transmitting COVID-19 **as stated in the manufacturers facts sheets.**

62.    Plaintiffs have history, jurisprudence, reason, logic, and facts to substantiate the likelihood of our success on the merits to this underlying case in which agencies of government broadened their statutory authority and executed a public health crisis which has circumvented the rule of law, American Jurisprudence, individual liberty, personal integrity; and in doing so: forcibly segregated, isolated, terrorized, mocked, and scoffed men and women of differing opinions regarding the efficacy and safety of masking and MRNA vaccination.

63.    While it is true that Judge Dick did enter an order on <u>March 29, 2023</u>, vacating her previous orders and enlightening the Plaintiffs with "new" guidance from the CDC as to the reasoning behind her sudden change of mind. However, on <u>August 11, 2022</u> the CDC had already pivoted and shifted the goalpost, yet again, by stating; "Pre-exposure prophylaxis. COVID-19 vaccine effectiveness against severe outcomes is lower in persons who are immune-compromised than in those who are not, and persons who are immune-compromised and have COVID-19

are at increased risk for intensive care unit admission and death while hospitalized, <u>irrespective of their vaccination status</u>.

64.    Therefore, the Plaintiffs remind this court; It is clear that First Amendment interests were either actively impaired and threatened at the time relief was sought. Without the granting of this injunction the impairment could be re-implemented at any time and the threat remains constant of being subject to the impulses and crochets of those officials receiving authority from administrative orders from judges and bureaucrats alike in the complete absence of lawful authority. <u>The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury</u>. See ***New York Times Co. 374\*374 v. United States, 403 U. S. 713 (1971).***[29] Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief. See ***Bantam Books, Inc. v. Sullivan, 372 U. S. 58, 67 (1963).***

65.    Plaintiffs allege effectively and sufficiently that de jure

segregation has been sanctioned by the government with the intent and purpose to identify, mark, and ultimately vilify any non-compliant members of society, and to forcibly remove access to government buildings across America.

66.    With ideologues armed with merely opinions, suggestions, and recommendations from "experts" in governmental positions, two classes of individuals emerged: one class with rights, privileges, and immunities to openly go in public, and the other class who was openly discriminated against, mocked, scoffed, condemned, and segregated from society without the equal enjoyment and protection of the law.

## ADDITIONAL DISCRIMINATORY ANIMI STILL OCCURRING IN THE MIDDLE DISTRICT

67.    The Plaintiffs have identified several discriminatory animi still in existence in the MDOL and they are as follows:

> a.  Attorneys are allowed e-filing privileges whereas *pro se* are not.

b. Attorneys and law enforcement agents are allowed to enter with their electronic devices, whereas the general public and pro se litigants cannot.

c. All visitors, except those 'recognized' by WALDEN AGENTS must identify themselves to WALDEN SECURITY or USMS, via state issued ID or passport, which violates the Fourth Amendment.

d. All visitors except courthouse employees and law enforcement officials are subjected to an unlawful search and seizure, via metal detectors and x-ray machines, as a condition to enter the courthouse.

e. Law enforcement officials and their private contractors are allowed to enter the courthouse with guns while members of the general public cannot.

WHEREFORE, for the reasons outlined in this document and the *2nd Rule 52 Motion* ROA.933 the Appellants move this Honorable Court to enter an Order granting injunctive and declaratory relief against all

Defendants, jointly and severally, and granting the Appellants the costs of this action, including attorney's fees and such other relief deemed to be just, fair, and appropriate.

Respectfully

Submitted,

**s/Brandon A. Sibley**
_____

17517 Cline Drive
Maurepas, LA 70449
Phone: (225) 369-7806
Fax: (985) 238-3818
Bsibley97@gmail.com

**s/Howard G. Brown**
_____

1344 Lakeridge Drive
Baton Rouge, LA 70802
Phone: (504) 756-1987
Fax: (985) 238-3818
hgarybrown@gmail.com

**s/Melanie Jerusalem**
_____

5130 Woodside Drive
Baton Rouge, LA 70808
Phone: 337-945-9008
jerusalemmelanie@yahoo.com

## CERTIFICATE OF COMPLIANCE

I, Howard Brown, undersigned, certify that:

1.     This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. 32(f), this document contains 5817 words, as determined by Microsoft Office Word 2019 word processing software.

2.     This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Century Schoolbook (14-point)

**Dated: September 24, 2023**

By:             s/Howard Brown

Howard Brown**,** *Pro Se*
*1344 Lakeridge Drive*
*Baton Rouge, LA 70802*
*504-756-1987*
*hgarybrown@gmail.com*

## <u>CERTIFICATE OF SERVICE</u>

I, Howard Brown, hereby certify that a copy of this motion was sent, via electronic service to

**AUSA Katherine Green**
777 Florida Street
Suite 208
Baton Rouge, LA 70801

**Elizabeth Bailly Bloch**
4605 Bluebonnet Boulevard
Suite A
Baton Rouge, LA 70809

**AUSA Karen King**
800 Lafayette Street
Suite 2200
Lafayette, LA 70501

**Justin Furrow**
**Chambliss, Bahner &**
**Stophel, P.C**.
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

**Nathan Kinard**
**Chambliss, Bahner &**
**Stophel, P.C**.
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

**Christine S. Keenan**
**The Kullman Firm**
4605 Bluebonnet Blvd
Suite A
Baton Rouge, LA 80809

**US Attorney Chase Evan**
**Zachary**
**U.S. Attorney's Office**
**Civil Division**
777 Florida Street
Suite 208
Baton Rouge, LA 70801

**By:**        s/Howard Brown
_____
Howard Brown**,** *Pro Se*
*1344 Lakeridge Drive*
*Baton Rouge, LA 70802*
*504-756-1987*
*hgarybrown@gmail.com*